## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MOHAMED NADER ALSHEREF, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )    Case No. CIV-26-89-G |
| | ) |
| MARKWAYNE MULLIN, Secretary, | ) |
| U.S. Department of Homeland Security, | ) |
| et al., | ) |
| | ) |
|     Respondents.[1] | ) |

## **ORDER**

On January 20, 2026, Petitioner Mohamed Nader Alsheref, appearing through

counsel, filed a Petition for Writ of Habeas Corpus (the "Petition," Doc. No. 1) challenging

his detention by U.S. Immigration and Customs Enforcement ("ICE") pursuant to 28

U.S.C. § 2241. In accordance with 28 U.S.C. § 636(b)(1), the matter was referred to

Magistrate Judge Chris M. Stephens for preliminary review. Certain Respondents[2] filed

an Answer (Doc. No. 12), and Petitioner filed a Reply (Doc. No. 13). The parties also

---

[1] Markwayne Mullin, the current Secretary of the U.S. Department of Homeland Security, David J. Venturella, Acting Director of U.S. Immigration and Customs Enforcement, and Attorney General of the United States Todd Blanche are hereby substituted as respondents for Kristi Noem, Todd Lyons, and Pamela Bondi, respectively, pursuant to Rules 25(d) and 81(a)(4) of the Federal Rules of Civil Procedure.

[2] Respondent Fred Figuera, Warden, Diamondback Correctional Facility, has not appeared in this action. The appearing respondents are: Secretary Mullin; Acting Director Venturella; Marcos Charles, Acting Executive Associate Director, ICE and Removal Operations; and Attorney General Blanche.

submitted supplemental briefing.  *See* Resp'ts' Suppl. Br. (Doc. No. 15); Pet'r's Suppl. Br. (Doc. No. 16).

On March 16, 2026, Judge Stephens issued a Report and Recommendation ("R. & R.," Doc. No. 17), recommending that the Petition be granted and Petitioner be released from custody subject to an appropriate order of supervision.  Respondents filed an Objection (Doc. No. 18) to the R. & R., to which Petitioner responded (Doc. No. 20).

Pursuant to controlling authority, the Court reviews de novo the portions of the R. & R. to which specific objection has been made.  *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

I.      *Background*

As set forth in the R. & R., although Petitioner was born in Libya, "he does not have Libyan citizenship."  R. & R. at 2.  Petitioner alleges that after he was born, the Libyan government began expelling Palestinian refugees such as his parents, and he and his family moved to Egypt.  *Id.* at 1-2.

On February 1, 2000, Petitioner entered the United States on a student visa issued pursuant to an Egyptian travel document.  *Id.* at 2.  In January 2006, Petitioner pleaded guilty to a federal drug crime and was sentenced to 32 months' imprisonment.  *Id.*  In April 2006, the U.S. Department of Homeland Security initiated removal proceedings against Petitioner, and he was charged as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).  *Id.*

On April 2, 2008, Petitioner was "ordered removed from the United States to Libya or another country as allowed by law."  *Id.*  Petitioner was served with a Notice of Intent to Issue a Final Administrative Order on April 11, 2008, and he "affirmed . . . that he did

not wish to contest his removal order or request withholding of removal." *Id.* at 2-3. Petitioner stated that he "wished to be removed to Egypt or Libya." *Id.* at 3.

Petitioner alleges that following the issuance of the Order of Removal, ICE attempted "to obtain a travel document from the consulates of Egypt, Libya, Israel, Palestine, and Jordan" but that these efforts were not successful. *Id.*; *see* Pet. ¶ 17. On March 3, 2008, Petitioner sent requests for travel documents to the embassies of Egypt, Jordan, and Libya. R. & R. at 3. "Neither party has provided the Court with evidence that Petitioner or ICE received any responses to these travel requests." *Id.* at 3 & n.3.

On August 4, 2008, ICE conducted a "custody review" and determined that Petitioner's "removal was not possible in the foreseeable future." *Id.* at 3. And on August 6, 2008, Petitioner was released pursuant to an Order of Supervision ("OOS"), which required that he regularly report to ICE and not commit any crimes. *See id.* at 3 & n.4. Petitioner alleges that he has since complied with the requirements of the OOS. *Id.* at 3.

On July 26, 2025, ICE again detained Petitioner. *Id.* at 4 & n.5. According to an ICE official, Petitioner was advised that he was detained because "he had a final order of removal." Safy Decl. (Doc. No. 12-4) ¶ 4. According to Petitioner, ICE did not provide him a reason for the redetention or state that circumstances had changed regarding the foreseeability of his removal. *See* R. & R. at 4; *see also* Pet. ¶¶ 21-22. Petitioner alleges that ICE did not represent that he had violated a condition of his OOS or that travel documents had been obtained for him. *See* R. & R. at 4; *see also* Pet. ¶¶ 21-22. Petitioner further alleges that he was not provided with an "informal interview" at the time he was redetained. Pet. ¶ 21.

Since his redetention in July 2025, Petitioner has "attempted to apply for travel documents from Tunisia, Morocco, Libya, Palestine, Israel, Jordan, and Egypt, but no travel document has been procured." R. & R. at 4. On July 30, 2025, an ICE Enforcement and Removal officer "prepared a request for a Palestinian travel document," which the officer forwarded "to the Embassy of Israel on August 25, 2025." *Id.*; *see also* Nation Decl. (Doc. No. 12-1) ¶ 13. Respondents do not allege that they have received any further update or response to this request. R. & R. at 4. Respondents, however, assert that ICE "believes Petitioner's removal is significantly likely in the reasonably foreseeable future" due to the "Government of Israel's willingness to accept Palestinians and allow them to travel through Israel so that they may be repatriated back to the West Bank Territory (Palestine)." *Id.* at 4-5; Nation Decl. ¶ 15.

On September 22, 2025, while housed in a detention facility in Texas, Petitioner sought habeas corpus relief in the U.S. District Court for the Northern District of Texas, alleging that ICE failed to follow federal regulatory requirements when redetaining him and violated his due process rights. R. & R. at 5 (citing *Alsheref v. Noem*, No. 25-cv-190, 2025 WL 4220420 (N.D. Tex. Dec. 3, 2025)). The Northern District of Texas denied relief on Petitioner's claims. *See Alsheref*, 2025 WL 4220420, at *8; R. & R. at 5.

ICE then transferred Petitioner from Texas to the Diamondback Correctional Facility in Watonga, Oklahoma. R. & R. at 5. After the instant Petition was filed, Petitioner was served with ICE's Decision to Continue Detention and provided an opportunity to request a personal interview. *Id.* According to the R. & R., Petitioner

4

"elected to have a personal interview," but neither party has informed the Court whether that interview occurred. *Id.*

## II.    Relevant Standards

A district court may issue a writ of habeas corpus when a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004); *see also Rasul v. Bush*, 542 U.S. 466, 483 (2004).

Pursuant to 8 U.S.C. § 1231(a), when a noncitizen is ordered to be removed, "the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A).[3] During this 90-day period, which is "referred to as the 'removal period,'" "the Attorney General shall detain the [noncitizen]." *Id.* § 1231(a)(1)(A), (2)(A); *see also Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody.").

Section 1231(a)(3) prescribes that if a noncitizen is not removed within the 90-day removal period, he or she may be released subject to "supervision" as set forth by relevant regulations. 8 U.S.C. § 1231(a)(3); *see also Phongsavanh v. Williams*, 809 F. Supp. 3d

---

[3] This Order uses "noncitizen" as an equivalent term to "alien."

864, 867 (S.D. Iowa 2025) ("The Government's ability to detain, release, and revoke the release of noncitizens subject to removal orders is governed by specific regulations."). As relevant here, federal authorities may then revoke such an order of supervised release and "return the alien to custody" "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Alternatively, an order of supervision may be revoked and the noncitizen returned to custody if the noncitizen "violates any of the conditions of release." *Id.* § 241.13(i)(1).

Revocation for either reason triggers a notification requirement and a review process:

> *Revocation procedures.* Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id.* § 241.13(i)(3).

### III.    Discussion

Petitioner alleges that ICE violated his rights under the Fifth Amendment Due Process Clause by "arbitrarily" redetaining him rather than following ICE's standard "orderly departure process." Pet. ¶¶ 25-29. Petitioner also argues that his detention is unlawful pursuant to *Zadvydas* because his continued detention has extended beyond a

6

reasonable time without a foreseeable likelihood of removal. *See id.* ¶¶ 28a-31a.[4]  Finally, Petitioner argues that ICE violated relevant statutes and regulations in effecting his redetention, in violation of the Immigration and Nationality Act. *See id.* ¶¶ 29a-31a, 31b-32b.   Petitioner seeks immediate release, with "reinstatement of his prior Order of Supervision." *Id.* at 11.

### A. The Report and Recommendation

Relevant to Petitioner's third argument, Judge Stephens concluded that "ICE failed to abide by" the requirements of 8 C.F.R. § 241.13(i)(2) when redetaining Petitioner on July 26, 2025, which renders the revocation of Petitioner's OOS unlawful and requires his immediate release pursuant to 28 U.S.C. § 2241(c)(3).  R. & R. at 22-25, 27.  In addition to concluding that this Court is not bound by the decision of the Northern District of Texas, Judge Stephens reasoned that Respondents have not shown that the presence of changed circumstances establish a significant likelihood of Petitioner's removal in the reasonably foreseeable future. *See id.* at 23 n.13, 23-25.

---

[4] A noncitizen may not be held in indefinite detention pending removal; "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.  The Supreme Court has directed that a six-month period of detention of a noncitizen subject to removal is presumptively reasonable. *See id.* at 701. After expiration of the six-month period and "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing" "for detention to remain reasonable." *Id.*

Respondents primarily object that the R. & R. incorrectly assessed the likelihood of Petitioner's removal in the reasonably foreseeable future.  *See* Resp'ts' Obj. at 4-5.[5]

        1.  *Respondents' Failure to Show a Proper Basis for Revocation on July 26, 2025.*

Respondents do not meaningfully challenge Judge Stephens' conclusion that they did not comply with the regulatory requirements when revoking Petitioner's OOS.  *See* Resp'ts' Obj. at 5.  Instead, Respondents argue that Petitioner's removal is significantly likely in the reasonably foreseeable future.  *See id.* at 4-5.  Respondents also argue that habeas relief, especially in the form of immediate release, is not a proper remedy for a regulatory violation.  *See id.* at 5-8.

---

[5] Respondents also assert that: (1) the R. & R. does not "seriously address" the decision of the Northern District of Texas; and (2) "Petitioner, in essence, forum shopped by filing a repeated challenge once transferred to the Western District of Oklahoma" and "should be estopped" from "filing a repeated challenge."  Resp'ts' Obj. at 5 & n.26.  Petitioner responds that Respondents may not merely rely on prior litigation that occurred in a different district and that the proper inquiry entails an analysis of the "present circumstances" of the likelihood of Petitioner's removal.  Pet'r's Resp. at 4.

Respondents' nominal objections are overruled.  First, this Court is not as a general matter bound by a fellow district court's determination.  *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (internal quotation marks omitted)).  Next, Respondents invoked estoppel for the first time in their Objection to the R. & R. and only conclusorily, with no supporting authority.  The argument, to the extent it is raised at all, is therefore waived.  *See Khaddaj v. Grant*, No. CIV-26-273-SLP, 2026 WL 1432690, at *1 n.3 (W.D. Okla. May 21, 2026).  Finally, consideration of the Petition is not barred by 28 U.S.C. § 2244(a), and Respondents have not sought dismissal under the abuse of the writ doctrine.  *See Lopez Galvan v. Figueroa*, No. CIV-26-943-HE, at 3 n.3 (W.D. Okla. June 17, 2026) (order); *Stanko v. Davis*, 617 F.3d 1262, 1271 (10th Cir. 2010).

8

Petitioner responds that Respondents' "generalized assertions" regarding their efforts to remove Petitioner are not sufficient to show that Petitioner's removal is likely. Pet'r's Resp. at 3.

The R. & R. concludes, and Respondents do not contest, that the revocation of Petitioner's OOS is governed by 8 C.F.R. § 241.13(i). *See* R. & R. at 22-24. Section 241.13(i) lists two reasons why an OOS may be revoked—(1) "[v]iolation of conditions of release," and (2) "[r]evocation for removal." 8 C.F.R. § 241.13(i)(1), (2). Respondents' objection implicates only the latter. *See* Resp'ts' Obj. at 4-5; *see also* R. & R. at 24.

As an initial matter, the undersigned concurs with the magistrate judge that Respondents did not comply with the applicable regulation when revoking Petitioner's OOS and redetaining him. According to Respondents, Petitioner was informed "[a]t the time of his arrest" that the basis for Petitioner's OOS revocation on July 26, 2025, was "his administratively final order of removal" and that he would "be held in ICE custody pending his removal from the United States." Safy Decl. ¶ 4. Petitioner's final order of removal had been in place since 2008, however. If this were the reason provided to Petitioner for his redetention, it would not suffice under § 241.13(i).[6]

---

[6] Petitioner represents that, to the contrary, "[n]o reason was provided for his re-detention or change of circumstances." Pet. ¶ 21. Without deciding which version of events is correct, the Court reaches its conclusion by reference to Officer Safy's Declaration. Relief would likewise be warranted, however, if no reason was provided to Petitioner.

### 2. The Likelihood of Petitioner's Removal

Further, Judge Stephens found that the record does not demonstrate that Petitioner's removal is significantly likely in the reasonably foreseeable future. *See* R. & R. at 23-24; *see also id.* at 11-21; 8 C.F.R. § 241.13(i)(2).

Respondents object, arguing that they "have established a substantial likelihood of removal in the reasonably foreseeable future" because (1) the court in Petitioner's previous habeas action found that Petitioner had acknowledged "that Israel had begun accepting persons of Palestinian descent" and (2) an ICE removal officer believes "that Petitioner's removal through Israel to Palestine" is "significantly likely in the reasonably foreseeable future." Resp'ts' Obj. at 5, 7 (citing *Alsheref*, 2025 WL 4220420, at *5); *see* Nation Decl. ¶ 15. Respondents also point to ICE's submission of a Palestinian travel document to the Embassy of Israel as further evidence of the ongoing efforts to remove Petitioner. *See* Resp'ts' Obj. at 5; Nation Decl. ¶ 13.

Upon de novo review, the Court agrees with the thorough reasoning in the R. and R. Respondents' reference to a general increase in the "Government of Israel's willingness to accept Palestinians" for repatriation does not suffice to show that Respondents made a specific determination, prior to revoking Petitioner's OOS and detaining Petitioner, that "on account of changed circumstances" there was "a significant likelihood" that Petitioner may be removed to "the West Bank Territory (Palestine)" via Israel "in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2); Nation Decl. ¶ 15. Any finding of a concession by Petitioner regarding changed circumstances as part of other litigation does not rehabilitate the lack of Respondents making such a determination under § 241.13(i)(2)

10

prior to revoking Petitioner's OOS.  Indeed, Respondents informed Petitioner that the reason for redetention was his 2008 final order of removal, not "changed circumstances." And Respondents did not begin preparing a "Palestinian travel document request" until July 30, 2025—five days after redetaining Petitioner.  Nation Decl. ¶¶ 12-13.  The request for travel documents was not submitted until August 25, 2025—nearly a month after Petitioner was redetained.  *Id.* ¶ 13.  Respondents provide "no evidence of progress they made towards removal of Petitioner himself before re-detention."  *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025).

Even assuming an individualized determination to revoke Petitioner had been made, Respondents did not provide Petitioner notice of a proper basis for revocation or the prompt "informal interview" that would have allowed Petitioner the opportunity to respond, both of which are required by the relevant federal regulation.  8 C.F.R. § 241.13(i)(3) ("Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.").  Further, Respondents have provided no additional information regarding the willingness of any country to accept Petitioner during the pendency of this matter.

Accordingly, this objection is overruled.

### 3.  Petitioner's Entitlement to Relief

Respondents object to the R. & R.'s conclusion that Petitioner is entitled to release based on violation of the applicable procedures, arguing that the "[f]ailure of officials to

11

follow their own policies, without more, does not constitute a due process violation, making a writ of habeas corpus generally unavailable for policy shortcomings." Resp'ts' Obj. at 5-6. Respondents additionally argue that the Court should not order release from custody based upon the regulatory violations because "corrective measures, to the extent necessary and ordered, would be made." *Id.* at 6.

As the R. & R. recognized, the undersigned has found that such regulatory defects amount to due process violations that entitle a petitioner to habeas relief. *See* R. & R. at 26 (citing *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *3-4 (W.D. Okla. Dec. 1, 2025)). *But see Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932, at *3-4 (W.D. Okla. Oct. 31, 2025); *Nguyen v. Bondi*, No. CIV-25-1204-JD, 2025 WL 4114231, at *3-5 (W.D. Okla. Dec. 31, 2025).

As the R. & R. concluded, this matter is distinguishable from *Bahadorani*. Unlike in *Bahadorani*, where the petitioner was "provided the reasons for his detention" and "an interview related to a review of his detention," *Bahadorani*, 2025 WL 3048932, at *3, Respondents here failed to provide proper § 241.13(i)(3) notice to Petitioner or any meaningful opportunity to challenge his revocation. And, while *Nguyen* rejected the proposition that habeas relief should lie for a regulatory violation, "the regulations under 8 C.F.R. § 241.13 . . . protect[] fundamental due process rights." *Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *5 (W.D. Okla. Feb. 20, 2026). "This Court, in agreement with the majority view, has found that such regulatory defects amount to due process violations that entitle a petitioner to habeas relief." *Cao v. Bondi*, No. CIV-25-

1403-G, 2026 WL 637617, at *6 (W.D. Okla. Mar. 6, 2026), *modified on other grounds*, 2026 WL 686839 (W.D. Okla. Mar. 10, 2026) (internal quotation marks omitted).

Based on the facts and circumstances of this case, Respondents' violation of § 241.13(i) denied Petitioner the process to which he was entitled by law, and such a denial entitles Petitioner to habeas relief.  *See Hamidi*, 2025 WL 3452454, at *3; *Cao*, 2026 WL 637617, at *5-6.  Accordingly, Respondents' objection is overruled.[7]

### B. Petitioner's Request for Costs and Fees

Petitioner also requests attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA").  *See* Pet. at 12.

As stated in the R. & R., the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention."  *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025), *petition for cert. filed*, No. 26-146 (U.S. July 30, 2026); *see* R. & R. at 7 n.7.  Such attorney's fees must be sought pursuant to the EAJA and by separate motion, however.  *See id.*; Fed. R. Civ. P. 54(d)(2), 81(a)(4); LCvR 54.2.  Any recovery of costs is governed by 28 U.S.C. §§ 1920 and 2412(a), Federal Rule of Civil Procedure 54(d)(1), and Local Civil Rule 54.1.

---

[7] Based on this disposition, the undersigned need not and does not reach Petitioner's other habeas claims.  *See Owdetallah*, 2026 WL 483648, at *3 ("Whether Petitioner's separate *Zadvydas* claim is ripe does not deprive the Court of jurisdiction to adjudicate the regulatory violation claim . . . .").  The undersigned denies Petitioner's additional requests for injunctive relief.  *See* Pet. at 11-12; R. & R. at 28; *Cao*, 2026 WL 637617, at *6.

CONCLUSION

In accordance with the above, the Report and Recommendation (Doc. No. 17) is

ADOPTED in relevant part.

IT IS THEREFORE ORDERED:

1.  The Petition for Writ of Habeas Corpus (Doc. No. 1) is GRANTED to the extent it requests relief pursuant to 28 U.S.C. § 2241 based upon violation of 8 C.F.R. § 241.13(i).[8]

2.  Petitioner's remaining claims are DISMISSED without prejudice.

3.  Respondents are ORDERED to immediately release Petitioner Mohamed Nader Alsheref into the United States, subject to an appropriate order of supervision.

4.  Respondents shall file a declaration pursuant to 28 U.S.C. § 1746 within five (5) days of the date of this Order affirming Petitioner's release from custody into the United States.

5.  For good cause shown and pursuant to Local Civil Rule 83.3(c), the Court GRANTS Petitioner's Motion (Doc. No. 22), seeking relief from this Court's local counsel requirement. Attorney Daniel A. Lorber may appear for Petitioner in this matter without showing association with local counsel.

6.  Petitioner's Motion (Doc. No. 23) is DENIED as moot.

7.  The Court will separately enter judgment but retains jurisdiction over this matter to ensure compliance with this Order.

IT IS SO ORDERED this 12th day of August, 2026.

CHARLES B. GOODWIN
United States District Judge

---

[8] The undersigned's conclusion herein does not foreclose the possibility that future events could constitute "changed circumstances" as contemplated by 8 C.F.R. § 241.13(i)(2).

14